IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED
2020 FEB 19 P 7:20
U.S. DISTRICT COURT
EASTERN DIST. TENN.
_____DEPT. CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 3:20-CR-18 |
| | ) |
| ANKUR KHEMANI | ) Judges Varlan / Guyton |
| GAURAV BHASIN | ) |
| MARILYN STERK | ) |
| JENNIFER STERK | ) |
| TERESA STERK VANBAALE | ) |

# INDICTMENT

The Grand Jury charges as follows:

## INTRODUCTION

At all times relevant to this indictment:

### *Individuals and Businesses*

1. ANKUR KHEMANI (aka "Andy") ("KHEMANI") is a citizen of India, and presently resides in Maryland, in accordance with bond conditions imposed by the U.S. District Court for the District of Nevada following his arrest on January 29, 2020.

INDICTMENT           PAGE 1           ANKUR KHEMANI, ET AL.

Case 3:20-cr-00018-TAV-HBG *SEALED*   Document 8   Filed 02/19/20   Page 1 of 13   PageID #: 42

2. GAURAV BHASIN ("BHASIN") is a United States citizen and presently resides in Maryland.

3. MARILYN STERK ("M. STERK") is a Unites States citizen and a resident of Otley, Iowa.

4. JENNIFER STERK ("J. STERK") is a Unites States citizen and a resident of Pella, Iowa. J. STERK is the daughter-in-law of M. STERK.

5. TERESA STERK VANBAALE ("VANBAALE") is a Unites States citizen and resident of Knoxville, Iowa. VANBAALE is the daughter of M. STERK.

### *The Scheme*

6. Beginning in or about 2014, KHEMANI, BHASIN, M. STERK, J. STERK, VANBAALE and other co-conspirators known and unknown to the Grand Jury, embarked upon a scheme through which they sought to steal as much money as possible by selling worthless and unnecessary computer programs and services to unsuspecting victims across the United States.

7. The scheme involved luring prospective victims into contacting phony technical support companies operated by the co-conspirators, and this was done in two ways. The first involved the use of spurious advertisements that were designed

to appear spontaneously – commonly called "pop up" advertising -- on the victims' computer monitors. Such an advertisement would falsely inform the victim that there was a serious problem with the victim's computer, which would result in dire consequences if not addressed immediately. For example, the victim might be told that his computer's security had been compromised by hackers and that the theft of his identity or financial account numbers was imminent. The advertisement would provide a helpful toll-free telephone number that the victim could call in order to get assistance with the purported problem. As a second tactic, the co-conspirators manipulated their bogus advertisements so that they were among the first reached by unwary victims who searched the Internet for technical support services. Whether the unsuspecting victim obtained the toll-free number from a pop-up advertisement or through an Internet search, calling that number put the victim in touch with the co-conspirators' call center in India.

8. Upon reaching the call center, the victim would be guided through a series of steps that would give a faux technician (actually one of the co-conspirators' representatives) remote access to the victim's computer. The technician would then pretend to run a battery of diagnostic tests on the victim's computer system.

Invariably, the tests would lead to the same grim diagnosis -- that the victim's computer was infected with malicious software that made it vulnerable to intrusion by hackers, who were perhaps already defrauding the victim. Using fear as motivation, the representative would sell the victim phony technical support services, bogus extended service contracts, and unneeded software, at a cost of anywhere from $300 to more than $1,500.

9. After the bogus technician had successfully frightened the victim into agreeing to the purchase of unneeded programs and technical support work on his computer, the victim would be directed to send payment by check, by U.S. Mail or FedEx, to an address that was controlled by a co-conspirator who was located in the United States. Upon receipt of the victim's payment, the co-conspirator in the United States would deposit the check into a bank account then send the funds by wire transmission to a bank account maintained by the co-conspirators in India.

## *Companies and Bank Accounts*

10. KHEMANI and BHASIN, assisted by other co-conspirators known and unknown to the Grand Jury, and residing both in India and the United States (collectively, the "Indian Conspirators") had the primary role in orchestrating the

scheme. The Indian Conspirators recruited individuals living in the United States, including M. STERK, J. STERK, VANBAALE, and other co-conspirators known and unknown to the Grand Jury (collectively, the "American Conspirators"), who were given the task of setting up fake technical support companies ("Tech Support Companies"). Some of the Tech Support Companies registered with the State of Iowa included AlignTeq, Tech Crew, IDT Info Solutions, Azure Support, Cloudcomm Technologies, M&A Tech, Toler Tech, and Tydan Tech. When registering the Tech Support Companies with state officials, the American Conspirators used their own home and post office box addresses as the business addresses.

11. After setting up the spurious Tech Support Companies, the American Conspirators, at the instruction of the Indian Conspirators, opened bank accounts in the name of each of the bogus companies. Into the these bank accounts, the American Conspirators deposited the checks received from victims as payment for the spurious technical support work. Then, after withdrawing a commission of between 5% and 10% as payment for their services, the American Coconspirators would send the Indian Coconspirators the remainder of the funds by wire transfer

and by other means. It was often necessary for the American Coconspirators to set up new bank accounts for the Tech Support Companies, because too many of the victims' checks were dishonored and the banks realized that the pattern of large deposits followed by offshore wire transfers was indicative of a scam.

## COUNT ONE

## CONSPIRACY TO COMMIT WIRE FRAUD AND MAIL FRAUD

## (18 U.S.C. § 1349)

12. The allegations contained in paragraphs 1 through 11 are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 1349.

13. From in or about 2014 through on or about January 30, 2020, in the Eastern District of Tennessee, and elsewhere, the defendants, KHEMANI, BHASIN, M. STERK, J. STERK, VANBAALE and other co-conspirators known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, including violations of Title 18, United States Code, Section 1341 (mail fraud) and Section 1343 (wire fraud).

## OBJECTS OF THE CONSPIRACY

14. It was a part and object of the conspiracy that the defendants, KHEMANI, BHASIN, M. STERK, J. STERK, VANBAALE and other co-conspirators known and unknown to the Grand Jury having devised a scheme and artifice for the purpose of defrauding and obtaining money and property by means of false and fraudulent pretenses and representations, would and did cause to be transmitted by means of wire and radio communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

15. It was a part and object of the conspiracy that the defendants, KHEMANI, BHASIN, M. STERK, J. STERK, VANBAALE and other co-conspirators known and unknown to the Grand Jury having devised a scheme and artifice for the purpose of defrauding and obtaining money and property by means of false and fraudulent pretenses and representations, would and did cause things to be deposited with and delivered by the U.S. Postal Service and by any commercial interstate carrier for the purpose of executing said scheme and artifice, in violation of Title 18, United States Code, Section 1341.

## MANNER AND MEANS

16. In furtherance of the conspiracy, and to accomplish the ends thereof, defendants, KHEMANI, BHASIN, M. STERK, J. STERK, VANBAALE and other co-conspirators known and unknown to the Grand Jury, used the following means, among others:

   a. On or about July 4, 2017, an individual whose identity is known to the Grand Jury and whose initials are "T.G.," and who resides in Morristown, Tennessee, in the Eastern District of Tennessee, contacted AlignTec, a bogus technical support company, by calling a toll-free telephone number provided by a pop-up advertisement on T.G.'s computer monitor, which falsely stated that T.G.'s computer was infected by a virus.

   b. During the telephone call with AlignTec, a representative of the co-conspirators, who falsely identified himself as a technician, made

fraudulent representations to T.G. regarding the need for repairs to T.G.'s computer system.

c. Having obtained remote access to T.G.'s computer through fraud and trickery, the representative of the co-conspirator used the means of electronic communications to perform unneeded tasks on T.G.'s computer to address non-existent problems.

d. Upon completion of the purported and unneeded repairs to T.G.'s computer, the co-conspirators' representative informed T.G. that the sum of $423 was due and payable to AlignTec for the services rendered.

e. On or about July 5, 2017, the conspirators caused FedEx to pick up a check for $423 from T.G. and deliver it to J. STERK, who deposited the check into a bank account in the name of AlignTec at Leighton State Bank.

All in violation of Title 18, United States Code, Section 1349.

# COUNT TWO

# CONSPIRACY TO COMMIT MONEY LAUNDERING

# (18 U.S.C. § 1956(h))

17. The allegations contained in paragraphs 1 through 16 are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 1956(h).

18. From in or about 2014 through on or about January 30, 2020, in the Eastern District of Tennessee, and elsewhere, the defendants, KHEMANI, BHASIN, M. STERK, J. STERK, VANBAALE, and other co-conspirators known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit;

    a. to transport, transmit and transfer funds from a place in the United States to a place outside the United States, that is, India, with the intent to promote the carrying on of specified unlawful activity, that is: (1) wire fraud, in violation of 18 U.S.C. § 1343; and (2) mail fraud

in violation of 18 U.S.C. § 1341, in violation of 18 U.S.C. §§ 1956(a)(2)(A)(i) and 2; and

b. to transport, transmit and transfer funds from a place in the United States to a place outside the United States, that is, India, knowing that the funds involved in the transportation represented the proceeds of some form of unlawful activity and knowing that such transportation was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, that is: (1) wire fraud, in violation of 18 U.S.C. § 1343; and (2) mail fraud in violation of 18 U.S.C. § 1341, in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2.

All in violation of Title 18, United States Code, Section 1956(h).

INDICTMENT PAGE 11 ANKUR KHEMANI, *ET AL.*

Case 3:20-cr-00018-TAV-HBG *SEALED* Document 8 Filed 02/19/20 Page 11 of 13 PageID #: 52

# FORFEITURE ALLEGATIONS

1. The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461.

2. Pursuant to 18 U.S.C. § 981(a)(1)(C), upon conviction of any offense in violation of 18 U.S.C. §§ 1349, any defendant so convicted shall forfeit to the United States any property, real or personal, constituting or traceable to the proceeds of any violation of 18 U.S.C. § 1349, including but not limited to the following property:

> A personal money judgment against the defendant and in favor of the United States of an amount not less than $4,064,428.43, representing the amount of proceeds obtained as a result of an offense in violation of 18 U.S.C. § 1349.

3. Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of 18 U.S.C. § 1956, any defendant so convicted shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following property:

> A personal money judgment against the defendant and in favor of the United States of an amount not less than $4,064,428.43, representing funds involved in an offense in violation of 18 U.S.C. § 1956(h).

4. If any of the property described above, as a result of any act or omission of a defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461.

A TRUE BILL:

**SIGNATURE REDACTED**

FOREPERSON

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

Frank M. Dale, Jr.
Jennifer Kolman
Assistant United States Attorneys

INDICTMENT                    PAGE 13                    ANKUR KHEMANI, ET AL.

Case 3:20-cr-00018-TAV-HBG *SEALED*   Document 8   Filed 02/19/20   Page 13 of 13 PageID #: 54